UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MARK P. DONALDSON,

     *Plaintiff,*

v.

LOUIS DeJOY, and
CHARLOTTE A. BURROWS,

     *Defendants*.
_____/

CASE NO. 1:20-cv-12775

DISTRICT JUDGE TERRENCE G. BERG
MAGISTRATE JUDGE PATRICIA T. MORRIS

### REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS (ECF No. 33) AND PLAINTIFF'S MOTION REQUESTING DISCOVERY (ECF No. 37)

**I.**    **Recommendation**

For the reasons below, **I RECOMMEND** that Defendants' Motion to Dismiss (ECF No. 24) be **GRANTED**, and Plaintiff's Motion Requesting Discovery (ECF No. 37) be **DENIED** as moot.

**II.**    **Report**

    **A.**    **Background**

Plaintiff is a white male in his sixties who alleges that he was fired from his position with the U.S. Postal Service ("USPS"), after a tumultuous start to his employment, based on his race, sex, age, and national origin. (ECF No. 27-2, PageID.435.)[1]

---

[1] Courts "must consider" documents, such as the exhibit here, which are "incorporated into the complaint by reference." *Tellabs, Inc. v. Makor Issues & Rights Ltd.*, 551 U.S. 308, 322 (2007). Accordingly, every exhibit attached to Plaintiff's complaint is properly construed as part of the complaint itself. *See id.*

1

Plaintiff was hired as a rural carrier associate at the Kalkaska, Michigan, Post Office and attended a two-day orientation in 2017 from July 31 through August 1. (ECF No. 27, PageID.226.) The orientation was attended by four male employees. (*Id.* at PageID.241.) On the first day of the orientation, another attendee, Thomas Lebeau, made an "offensive statement" about "hitting" Plaintiff "on the head" which was heard by the orientation trainer, Julie Campbell. (*Id.* at PageID.240.) Campbell subsequently separated the pair. (*Id.* at PageID.306.)

Plaintiff alleges that Campbell made "inappropriate" statements throughout the orientation. (*Id.* at PageID.244.) For example, Campbell once told the orientation group about an incident where a male coworker stated to her, "[h]i beautiful." (*Id.*) She explained to the group that "you could just see what [the male coworker] was thinking in his eyes" implying that the statement had a sexual subtext. (*Id.*) She then "screamed really loud and pointed when she reenacted to the attendees her previous reaction . . . to the man . . . ." (*Id.*) Later on, Campbell overheard Plaintiff tell a "younger male" that Campbell "didn't handle the harassment thing correctly . . . ." (*Id.*)

On the second day of orientation, although Plaintiff was told that he could only be let into the building by Campbell or the other "orientation teacher," he was let into the building by another individual. (*Id.*) Plaintiff's orientation teacher questioned him about the incident, and throughout the day Campbell "changed her actions, sitting positions, and demeanor towards" Plaintiff. (*Id.*) Shortly before lunch, Campbell made another statement which Plaintiff viewed as "inappropriate" when she informed the orientation group that

2

"her former manager was in" the building and that in the past he had "made her cry." (*Id.* at PageID.244–45.)

Plaintiff's complaint mentions an incident during the orientation where he and the other trainees were instructed to write "comments and ideas" concerning assigned topics on large sheets of paper. (ECF No. 27-3, PageID.485–86.) On one of Plaintiff's sheets, he wrote the phrase "mans world." This sheet was later hung up in the orientation room by Campbell. (*Id.*; ECF No. 27, PageID.287.)

Plaintiff also generally alleges that a Hispanic trainee, Nick Nitlet, was treated more favorably than he was. (ECF No. 27, PageID.304.) Specifically, he alleges that Campbell "scream[ed]" and "point[ed]" at him and Nitlet, but that later Campbell only apologized to Nitlet. (ECF No. 27-3, PageID.484.)

On August 8, a week after his orientation, Plaintiff shadowed a more experienced rural carrier, Melissa Andrzejewski. (ECF No. 27, PageID.240.) Plaintiff asserts that once during their route, Andrzejewski, in violation of USPS policies, backed her vehicle up to reach a mailbox.[2] (ECF No. 27, PageID.245–46, 289, 301–02.) Plaintiff also alleges that Andrzejewski referred to herself as the "Queen of the Brown Nosers." (*Id.* at PageID.246.) After their route, both Plaintiff and Andrzejewski approached their supervisor, Barbara Wandrie, to explain both incidents. (*Id.*) Wandrie declined to reprimand Andrzejewski or to conduct any further investigation into the incidents. (*Id.* at PageID.247.) Nor did

---

[2] While Andrzejewski claims that she only backed her vehicle up six inches, Plaintiff suggests that she backed up her vehicle farther. (*Id.* at PageID.246–47.) Plaintiff further alleges that Andrzejewski's statement that she backed her vehicle up by six inches was actually a "denigrating and disparaging sexual innuendo" referring to a penis. (ECF No. 27-3, PageID.490.)

3

Wandrie inform Plaintiff of his option to file a formal complaint. (*Id.* at PageId.305–06.) Plaintiff states that Wandrie's dismissal of the incidents "create[d] serious animus towards" him, was "prejudicial," and was "sex [or] age discriminat[ion]." (*Id.* at PageID.246–47.)

Plaintiff was required to attend an additional training from August 15, 2017, through August 18 in Muskegon. (ECF No. 27-4, PageID.631–33; ECF No. 27, PageID.253.) Wandrie required him to make his own travel arrangements, but advanced him a $500 stipend and suggested that he stay at the Red Roof Inn. (ECF No. 27-4, PageID.631–33.) Plaintiff instead chose to book at a more expensive hotel, and Wandrie warned him that she might not be able to reimburse him for the hotel he booked. (*See id.* at PageID.638.) Plaintiff then cancelled his reservation, and although Wandrie asked Plaintiff to "make [his] reservation at the Red Roof Inn as [she] first instructed," Plaintiff responded by demanding Wandrie to "send [him] asap the complete list of all approved hotels in the Muskegon area." (*Id.* at PageID.634, 638.) The following morning, Plaintiff called the USPS's District Finance Office to request a copy of the USPS's "F-15 Travel and Relocation handbook." (ECF No. 27, PageID.295.) Plaintiff then wrote a letter to Wandrie informing that her that he failed to book a room and that he would have to reschedule the training. (ECF No. 27-3, PageID.470.)

Wandrie fired Plaintiff the same day. (ECF No. 27-4, PageID.612.) Wandrie explained that she fired Plaintiff for "multiple incidents" where he "demonstrated a less than professional demeanor . . . ." (*Id.*) Specifically, she cited "multiple problems"

4

reported by Campbell during orientation, Plaintiff's interaction with Andrzejewski,[3] and his "uncooperative attitude" with Wandrie when trying to secure a hotel. (ECF No. 27-4, PageID.612.)

Plaintiff filed a formal complaint with USPS. (ECF No. 27-2; ECF No 27-3.) Plaintiff alleged race, sex, and age discrimination, in addition to retaliation, but he did not allege national origin discrimination. (*See id.*) The Equal Employment Opportunity Commission ("EEOC") denied Plaintiff's claims and issued a notice of final action on July 16, 2020. (ECF No. 27, PageID.227, 321.) Plaintiff filed the present suit on October 14, 2020. (*Id.*)

On March 25, 2021, Plaintiff filed a one hundred page amended complaint, with over 400 pages of exhibits, which alleged eighteen claims against Louis DeJoy, the Postmaster General, and Charlotte Burrows, the chair of the EEOC. (ECF No. 27.) The first fifteen counts allege several errors by the EEOC and the USPS during the EEOC proceedings. (*Id.*) Most of these errors concern discovery disputes, but some concern substantive decisions made by the administrative law judge ("ALJ") in the EEOC proceeding. (*Id.*) The last three counts of Plaintiff's amended complaint allege retaliation and discrimination based on Plaintiff's race, sex, age, and national origin. (*Id.* at PageID.300–315.) Defendants filed a motion to dismiss the amended complaint in part, and Plaintiff subsequently filed a response to the motion to dismiss along with a "Motion Requesting Discovery." (ECF Nos. 33, 37, 38.) Briefing on both motions is complete.

---

[3] Although Wandrie claims that Plaintiff "berat[ed]" Andrzejewski, Plaintiff denies this. (ECF No. 27, PageID.247.)

## B. Standard of Review

Defendants challenge Plaintiff's first fourteen claims under Rule 12(B)(1) and for dismissal of counts sixteen through eighteen under Rule 12(b)(6). Where a defendant files a motion to dismiss under both 12(b)(1) and 12(b)(6), the Rule 12(b)(1) challenge must be addressed first because "the Rule 12(b)(6) challenge becomes moot if this court lacks subject matter jurisdiction." *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

Under Rule 12(b)(1) a defendant may move to dismiss a complaint on the grounds that the district court lacks subject matter jurisdiction. Where subject matter jurisdiction is challenged under Rule 12(b)(1), it is the plaintiff's burden to prove that the district court has jurisdiction. *See id.* The court will accept the complaint's factual allegations as true insofar as the defendant facially challenges the "sufficiency of the pleading" itself. *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). However, the complaint's factual allegations are not presumptively true where there is a factual controversy. Instead, the court must "weigh the conflicting evidence to arrive at the factual predicate that subject matter jurisdiction exists or does not exist." Here, Defendants facially challenge this Court's jurisdiction to hear counts one through fourteen because there are no material factual disputes which would affect subject matter jurisdiction.

Defendants separately challenge counts sixteen through eighteen under Rule 12(b)(6). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Accordingly, a plaintiff's complaint shall be dismissed for failure to state a claim if it lacks sufficient "factual matter

(taken as true) to" provide "plausible grounds to infer" that the elements of a claim for relief could be met. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *see* Fed. R. Civ. P. 12(b)(6). A complaint must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Mere labels, conclusory statements, or "formulaic recitations" of the elements of a cause of action are not sufficient to meet this burden if they are unsupported by adequate factual allegations. *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The requirement to provide a plausible claim does not require that a claim be "probable"; however, a claim must be more than merely "conceivable." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–80 (2009).

Because Plaintiff filed his complaint *pro se*, his pleadings are liberally construed. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).

    **C.    Analysis**

        **1.    Defendants' Motion to Dismiss**

            **a.    Counts One Through Fifteen**

The first fifteen counts of Plaintiff's complaint concern alleged errors before the EEOC by either the ALJ, USPS, or both. These counts allege errors under the Federal Rules of Civil Procedure, the Due Process Clause of the Fifth Amendment,[4] the Illinois Rules of Professional Conduct, and Title VII and its corresponding rules and regulations.

---

[4] Plaintiff's Complaint refers to the Due Process Clause of the Fourteenth Amendment, but it is the Fifth Amendment Due Process Clause that applies to the Federal Government. *See Barron v. Baltimore*, 32 U.S. 243, 250 (1833); *Scott v. Clay County*, 205 F.3d 867, 873 n.8 (6th Cir. 2000). Due to his pro se status, I construe Plaintiff's complaint as having alleged a Fifth Amendment violation. *See Spots*, 429 F.3d at 248.

7

(*See* ECF No. 27, PageID.256–99.) Most of these counts allege errors concerning discovery disputes before the EEOC. (*See id.*) Defendants contest the first fourteen counts insofar as they assert claims against the EEOC though Defendant Burrows for errors under Title VII and its corresponding rules and regulations. (ECF No. 33, PageID.867–69.)

"Federal courts are courts of limited jurisdiction," possessing "only that power authorized by Constitution and statute . . . ." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Although Congress may grant certain rights by statute, an aggrieved individual may only bring a suit for a violation of these rights if Congress expressly or implicitly created a private cause of action. *See Touche Ross & co. v. Redington*, 442 U.S. 560, 568, 571 (1979). In cases where, such as here, the only basis for jurisdiction is a federal question,[5] a private cause of action is a prerequisite for jurisdiction. *Bailey v. Johnson*, 48 F.3d 965, 966–68 (6th Cir. 1995) (holding that the Court lacked federal question jurisdiction where the applicable statute did not create a private cause of action); *see also Lamb v. Oklahoma*, 804 F. Supp. 1430, 1431 (W.D. Okla. 1992). Federal question jurisdiction exists where a suit "arises under" a federal law "that creates the cause of action." *Am. Well Works v. Layne*, 241 U.S. 257, 260 (1916).[6] Thus, without a cause

---

[5] This Court does not have diversity jurisdiction because "diversity jurisdiction never lies in an action against the Federal Government or its officials in their official capacities." *Molton, Allen, & Williams, Inc. v. Harris*, 436 F. Supp. 853, 855 (D.D.C. 1977) (first citing *Texas v. I.C.C.*, 258 U.S. 158, 160 (1922) and then citing *Hancock Fin. Corp. v. F.S.L.I.C.*, 492 F.2d 1325, 1329 (9th Cir. 1974)).

[6] This is not he exclusive test for determining whether a cause of action arises under federal law—a state law cause of action may also arise under federal law if it "necessarily turns on some construction of federal law." *Franchise Tax Bd. Of State of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 9 (1983).

of action, a suit cannot arise under any federal law, and no federal question would properly be before the court.[7]

This issue was thoroughly analyzed by the Northern District of California which held that Congress did not intend to create a private cause of action against the EEOC under Title VII. *Hall v. EEOC*, 456 F. Supp. 695, 698–700 (N.D.Cal.1978); *accord Ward v. EEOC*, 719 F.2d 311, 313 (9th Cir. 1983); *Francis-Sobel v. U. of Maine*, 597 F.2d 15, 17–18 (1st Cir. 1979). In *Hall*, the Plaintiffs sued the EEOC, alleging that they had "been denied a proper investigation of their discrimination charge" which made it difficult for them "to obtain a remedy . . . ." *Hall*, 456 F. Supp. at 697–98. The court first recognized that no section in Title VII expressly created a right of action against the EEOC. *Id.* at 698. The court then reasoned that Congress did not implicitly intend to create a private right of action. *Id.* at 699–700. Under Title VII, a "party dissatisfied with the EEOC may . . . circumvent the EEOC entirely and file his own suit. *Id.* at 699. The following suit would be "entirely de novo" and would "not in any way rely on the EEOC's actions . . ." *Id.* Under this scheme, Congress appears to have provided an alternative means to remedying errors by the EEOC. *See id.* Rather than suing the EEOC, a party may simply file a federal action and his or her "interest in remedying any discrimination which is still occurring and

---

[7] In *Bailey v. Johnson*, the Sixth Circuit held that federal question jurisdiction could not exist where the underlying statute did not create a private cause of action. 48 F.3d at 966–68. At first blush, this opinion is at odds with an earlier Supreme Court case, *Davis v. Passman*, which analyzed subject matter jurisdiction as a distinct issue from the existence of a private cause of action. 442 U.S. 228, 236–44 (1979). Indeed, the *Davis* Court held that it had federal question jurisdiction over the matter before it subsequently held that the plaintiff also had a private cause of action. *Id.* However, the Court defined "cause of action" as a plaintiff's ability to "invoke" the court's "federal-question jurisdiction." *Id.* at 239 n.18, 244. Thus, while federal question jurisdiction and the existence of a cause of action are distinct issues, the existence of a federal question depends, in part, whether the applicable law has created a right of action. *Id.*

obtaining relief for past discrimination [would be] fully satisfied." *Id.* Indeed, at the time of the 1972 Amendments to Title VII, the EEOC was "severely overburdened" by a "substantial backlog" of cases. *Id.* In this context, it made sense that Congress would have intended to create a scheme that would alleviate this burden, such as by allowing parties to essentially start from scratch in federal court, rather than a scheme that would only exacerbate this backlog by allowing parties to sue the EEOC for errors made at the administrative level. *Id.*

The Sixth Circuit has adopted this approach in a handful of unreported cases. *Darby v. U.S. Dept. of Energy*, No. 05-4325, 2006 WL 7348136, at *6 (6th Cir. June 9, 2006); *Milhous v. EEOC*, No. 97-5242, 1998 WL 152784 at *1 (6th Cir. Mar. 24, 1998); *Stemer v. Wayne Cty. Dep't of Health*, No. 85-1308, 1986 WL 17166, at *1 (6th Cir. June 3, 1986).

Accordingly, I suggest that this Court lacks subject matter jurisdiction over Plaintiff's claims against the Defendant Burrows under Title VII because Title VII does not provide Plaintiff with a private right of action.[8] *Garcia v. Lahood*, No. 12-cv-019, 2013 WL 3288294, at *9 (N.D. Okla. June 28, 2013) (holding that because "there is no private right of action against the EEOC" for inadequate investigations, a plaintiff may not bring a claim against the chair of the EEOC for an inadequate EEOC investigation). Similarly, I suggest that Plaintiff does not have a private right of action against the USPS under Title VII for any errors before the EEOC. *See Hall*, 456 F. Supp. At 699. Nor does

---

[8] Nor does the Administrative Procedures Act create a private right of action. *Gillis v. U.S. Dept. of Health & Human Serv's*, 7759 F.2d 565, 575 (6th Cir. 1985).

this Court have jurisdiction under Title VII to hear count fifteen which alleges errors pertaining to the parties' mediation. *See id.*; (ECF No. 27, PageID.297–99.)

Plaintiff also alleges that several of the same errors before the EEOC violated his procedural and substantive due process rights. Individuals generally do not have a private cause of action for violations of their constitutional rights by federal officials. *See Mora v. Barnhart*, No. C12-2215, 2013 WL 2285970, at *4 (W.D. Wash. May 22, 2013). Nonetheless, courts have occasionally found that certain Constitutional provisions "impl[y] a private right of action against federal employees who violate a plaintiff's constitutional rights while acting under color of state law." *Id.* (citing *Wilkie v. Robinson*, 551 U.S. 537, 549–50 (2007)); *see Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). However, courts will not construe a private right of action "where there exists an alternative, existing process capable of protecting the constitutional interests at stake because such an alternative constitutes a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy." *Mora*, 2013 WL 2285970, at *4 (quotation marks omitted) (quoting *Minneci v. Pollard*, 565 U.S. 118, 125–27 (2012)); *see also Callahan v. Federal Bureau of Prisons*, 956 F.3d 520, 523–24 (6th Cir. 2020). As discussed, Title VII provides Plaintiff with "an adequate remedy for the EEOC's" and the USPS's "alleged mishandling of [his] claims." *Mora*, 2013 WL 2285970, at *4; *accord Francis-Sobel*, 597 F.2d at 18. Accordingly, I suggest that this Court lacks jurisdiction to hear Plaintiff's constitutional claims.

Last, Plaintiff has no private right of action to assert claims against either defendant for violations of the Federal Rules of Civil Procedure or the Illinois Rules of Professional

11

Conduct 3.3(a)(1)–(3), 4.1(a). First, the Federal Rules of Civil Procedure do not apply to administrative proceedings, and even if they did, aggrieved individuals do not have a private right of action for violations of the Federal Rules of Civil Procedure. *Kelly v. U.S. E.P.A.*, 203 F.3d 519, 523 (7th Cir. 2000); *Digene Corp. v. Ventana Med. Systems, Inc.*, 476 F. Supp.2d 444 451–52 (D. Del. 2007). Likewise, I suggest that this Court lacks jurisdiction over Plaintiff's claims that USPS's counsel lied before the ALJ because the Illinois Rules of Professional Conduct do not establish a private right of action "for victims of alleged attorney misconduct." Illinois R. Prof'l Conduct pmbl. ¶ 20; *see Raghavendra v. N.L.R.B.*, No. 08 Civ. 8120, 2009 WL 5908013, *22 (S.D.N.Y. Aug 27, 2009); *Zanders v. Jones*, 680 F. Supp. 1236, 1239 & n.4 (N.D. Ill. 1988). Rather, these rules are enforced by the Illinois Supreme Court which has the authority to impose sanctions. *See* Illinois R. Prof'l Conduct pmbl. ¶¶ 10, 16, 20. Moreover, these alleged errors, like Plaintiff's related Title VII and constitutional claims are adequately remedied by filing his complaint in federal court. *See Hall*, 456 F. Supp. at 699 (citing *Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355, 365 (1977)).

### b. Counts Sixteen Through Eighteen

#### i. Discrimination

Title VII of the Civil Rights Act of 1964 prohibits employers from "discharging" or "discriminating against" any employee because of the employee's "race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2 (2012). Likewise, the Age Discrimination Enforcement Act ("ADEA") prohibits employers from taking adverse employment actions against an employee because of the employee's age. 29 U.S.C. §

623(a)(1) (2012). To survive summary judgment, a plaintiff alleging discrimination under Title VII or the ADEA must provide either direct or circumstantial evidence of discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Sheick v. Tecumseh Public Schools*, 766 F.3d 523, 529 (6th Cir. 2014). To survive summary judgment based on circumstantial evidence, a plaintiff has the initial burden of establishing a prima facie case of discrimination. *Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir. 2008).

However, plaintiffs need not plead facts establishing a prima facie case of discrimination to survive a motion to dismiss for failure to state a claim. *Bell Atlantic Corp.*, 550 U.S. at 569 (citing *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508 (2002)). The elements of a prima facie case outlined in *McDonnell Douglas* are "an evidentiary standard, not a pleading requirement." *Swierkiewicz*, 534 U.S. at 510. Indeed, because discovery may uncover direct evidence of discrimination, a plaintiff may plead more facts than he or she ultimately needs to prove to succeed on the merits if he or she were required to plead a prima facie case. *Id.* at 510–12.

At the pleading stage, a plaintiff is only required to plausibly allege that he or she was discriminated against because of his or her status in a protected class. *Id.* The plaintiff must "allege sufficient 'factual content' from which a court could 'draw the reasonable inference' of . . . discrimination." *James v. Hampton*, 592 F. App'x 449, 461 (6th Cir. 2015) (citing *Ashcroft*, 556 U.S. at 678 (2009)). In other words, the complaint must "giv[e] rise to reasonably founded hope that the discovery process will reveal relevant

13

evidence to support her claims." *Lindsay v. Yates*, 498 F.3d 434, 440 n. 6 (6th Cir. 2007) (quotation marks omitted) (quoting *Twombly*, 550 U.S. at 559–60).

For example, in *Keys v. Humana*, the Sixth Circuit held that a complaint that failed to establish a prima facie case of discrimination nonetheless plausibly stated a claim under Title VII. 684 F.3d 605, 610 (6th Cir. 2012). Specifically, the complaint alleged that the defendant "had a pattern or practice of discrimination against African Americans," and it detailed events in which the plaintiff, a Black woman, was treated differently than her White counterparts. *Id.* The complaint identified the "relevant persons by race and either name or company title," and it alleged that Black employees received "adverse employment actions notwithstanding satisfactory" performance. *Id.* Although the plaintiff had not alleged that her White coworkers were similarly situated, the Sixth Circuit reasoned that the plaintiff had nonetheless pleaded more than enough facts for it to infer that the plaintiff was discriminated against because of her race. *Id.* at 609–10.

Although this standard is liberal, a complaint will not survive a 12(b)(6) motion simply because it pleads facts that are "merely consistent with liability." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 505 (6th Cir. 2013). The Court need not make "unwarranted factual inferences," and although "the mere existence of more likely alternative explanations does not automatically entitle a defendant to dismissal," the court cannot analyze the plausibility of a complaint "in a vacuum." *Perry v. Se. Boll Weevil Eradication Found.*, 154 F. App'x 467, 471 (6th

14

Cir. 2005); *16630 Southfield Ltd. P'ship*, 727 F.3d at 505. "The reasonableness of one explanation for an incident depends, in part, on the strength of competing explanations." *16630 Southfield Ltd. P'ship*, 727 F.3d at 505. For example, in *16630 Southfield Ltd. Partnership v. Flagstar Bank, F.S.B.*, the Sixth Circuit held that a plaintiff did not plausibly allege that he was denied a loan refinancing because of his Iraqi national origin. *Id.* The Court reasoned that his "Iraqi origin," even when coupled with his offer to provide additional collateral, was overshadowed by the more obvious explanation for his denied loan—that he had previously failed to pay his original loan on time and already had the same loan refinanced once before. *Id.*

Similarly, here, Plaintiff's dubious allegations of discrimination are overshadowed by more likely explanations. Plaintiff provides no plausible explanation for how he was discriminated based on his race, age, national origin, or sex.

First, Plaintiff's explanations for why he was terminated because of his sex are puzzling. Plaintiff claims that Campbell's stories of sexual harassment that she experienced were evidence that she held a discriminatory animus towards men; however, this inference is unwarranted, and the fact that Campbell may have been spiteful towards Plaintiff after hearing him criticize her sexual harassment story in no way shows that she has any animus towards men in general. (*See* ECF No. 27,

15

PageID.244.) Quite the opposite, it provides an explanation for her behavior towards Plaintiff that is unrelated to his sex.[9]

Plaintiff also states that Andrzejewski's reference to herself as a "brown noser" is evidence of discrimination. But the phrase "brown noser" merely means that she is a sycophant—what this has to do with animus towards men, the Court is left to wonder. *Brownnose*, Merriam-Webster, https://www.merriam-webster.com/dictionary/brownnose (last visited Nov. 19, 2021). At best, Plaintiff alleges that Wandrie's failure to reprimand Andrzejewski for this "inappropriate" comment (as well as for backing up her vehicle) is evidence that she favored her fellow female subordinates over her male subordinates. (*See* ECF No. 27, PageID.312.) However, an exceedingly more likely explanation is apparent. Andrzejewski's comment, and her mistake of backing up her mail truck, were not serious offenses. By contrast, Plaintiff's complaint, and his attached exhibits, demonstrate that he was difficult to work with and frequently clashed with his coworkers. Moreover, Plaintiff, unlike Andrzejewski, had only been at the postal service for a relatively short period of time. *Cf. 16630 Southfield Ltd. P'ship*, 727 F.3d at 505.

---

[9] Plaintiff's allegation that Campbell publicly displayed a piece of paper on which he wrote "mans world" is vague and confusing. (*Id.* at PageID.287.) This Court cannot draw any meaningful inferences from this fact.

Nor does Plaintiff plausibly allege that he was discriminated against based on his race or national origin.[10] Plaintiff claims that he and a Nicaraguan coworker were berated at the orientation by Campbell, but that Campbell only apologized to the Nicaraguan coworker. (ECF No. 27, PageID.304; ECF No. 27-3, PageID.484.) This de minimis action, by itself, is inadequate to plausibly allege any discriminatory intent. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (explaining that Title VII is not a "'general civility code.'"). Moreover, although Plaintiff need not show at the pleading stage that the USPS is "that unusual employer" who discriminates against the majority class, it is unlikely that Wandrie, who is White, would fire Plaintiff, who is also White, because of his race. (ECF No. 27-2, PageID.409); *see* Lihi Yona, *Whiteness at Work*, 24 Mich. J. of Race & Law 111, 121 (2018) ("Cases acknowledging intraracial discrimination between Whites are almost nonexistent . . . ."). Plaintiff's uncooperative attitude during his brief stint as a postal worker provides a far more likely explanation for his termination.

As to Plaintiff's age, he simply alleges that he was over sixty and was fired by a manager who was forty-six. (ECF No. 27-2, PageID.409.) This is not enough for the Court to infer any discriminatory intent. *Cf. 16630 Southfield Ltd. P'ship*, 727 F.3d at 505.

### ii. Retaliation

---

[10] Alternatively, I suggest that Plaintiff's national origin discrimination claim must be dismissed because Plaintiff failed to exhaust this claim before the EEOC. (ECF No. 27-2; ECF No 27-3); *see Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 993 (6th Cir. 2009); 29 C.F.R. § 1614.105(a)(1).

Both Title VII and the ADEA prohibit employers from retaliating against employees who have either (1) opposed a discriminatory action under either statue or (2) participated in an investigation regarding a violation of either statute. 21 U.S.C. § 623(d) (2012); 42 U.S.C. § 2000e-3(a) (2012). Retaliation is analyzed under the *McDonell-Douglas* framework at the summary judgment stage; however, like discrimination, a plaintiff need not establish a prima facie case to survive a 12(b)(6) motion. *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018); *see Swierkiewicz*, 534 U.S. at 510–11.

Even so, Plaintiff has not plausibly alleged that the USPS retaliated against him. Plaintiff argues that he engaged in "participation" conduct under the statute by informing USPS's finance department of his issues obtaining lodging for his training in Muskegon. (ECF No. 27, PageID.313.) He also argues that he engaged in participation conduct by informing Wandrie of Andrzejewski's "brown noser" comment. (*Id.*) However, "participation" conduct must be "pursuant to a pending EEOC charge." *See Abbott v. Crown Motor Co.*, 348 F.3d 537, 542–43 (6th Cir. 2003). That is not the case here.

Plaintiff did "oppose" several actions by Wandrie, Campbell, and Andrzejewski, but none of these actions were prohibited by Title VII or the ADEA. For example, Plaintiff's complaints about Andrzejewski backing up her truck and calling herself a brown noser, even if inappropriate, do not concern actions prohibited by Title VII or the ADEA. (ECF No. 27, PageID.313.) Likewise, his complaints about his problems finding lodging for the training in Muskegon do not concern conduct prohibited by Title VII or the ADEA. (*Id.*) Plaintiff also alleges that Campbell's failure to investigate Lebeau's "threat" to hit

18

Plaintiff in the head was retaliation, but Plaintiff does not specify what Campbell was retaliating against him for. (*Id.* at PageID.304.)

Accordingly, I suggest that Plaintiff has not plausibly alleged discrimination or retaliation under either Title VII or the ADEA and counts sixteen through eighteen should be dismissed.[11]

### II. Motion Requesting Discovery

Plaintiff has also filed a document titled "Motion Requesting Discovery" which appears to be a motion to compel discovery. (ECF No. 37.) Because the entirety of Plaintiff's complaint should be dismissed, I suggest that this motion should be denied as moot.

### III. Conclusion

For the reasons above, I **RECOMMEND** that the Court **GRANT** Defendants' motion and **DENY** Plaintiff's motion as moot.

### IV. Review

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections

---

[11] Count eighteen alleges that USPS had "mixed motive[s]" in firing Plaintiff. (*Id.* at PageID.314.) However a defendant's "mixed motives" are not an independent cause of action. "Mixed motives" instead describes a situation where an employee "suffered an adverse employment action because of both permissible and impermissible considerations*." Gross v. FBL Fin. Servs., Inc.*, 557 S. Ct. 2343, 2345 (2009).

19

constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: November 29, 2021                              S/ PATRICIA T. MORRIS
                                                                                Patricia T. Morris
                                                                                United States Magistrate Judge